UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

---------------------------------------------------------------- X

RANDALL DANTZLER,

Petitioner,

- against -

SUPERINTENDENT,
Sing Sing Correctional Facility,

Respondent.

---------------------------------------------------------------- X

MEMORANDUM AND ORDER

09-CV-1513 (JG)

A P P E A R A N C E S:

RANDALL DANTZLER
# 06A6219
Sing Sing Correctional Facility
354 Hunter Street,
Ossining, NY 10562
Petitioner, *pro se*

CHARLES J. HYNES
District Attorney
Kings County
350 Jay Street
Brooklyn, NY 11201
By: Rhea Grob
Leonard Joblove
Attorneys for Respondent

JOHN GLEESON, United States District Judge:

Randall Dantzler, a prisoner incarcerated in the Sing Sing Correctional Facility, petitions for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from a judgment of the New York State Supreme Court, Kings County. Dantzler was convicted of weapons and assault charges after a jury found that he shot Randall Scott on a street in Bedford-Stuyvesant.

Appearing *pro se,* Dantzler contends that the trial court erred by instructing the jury that it could draw an adverse inference against him because his mother did not testify in support of his alibi. He also argues that the twelve-year sentence he received for his crimes was excessive. Oral argument, at which Dantzler appeared by teleconference, was held on September 11, 2009. For the reasons set forth below, the petition is denied.

## BACKGROUND

### A. *The Offense Conduct*

The evidence at trial established the following. Randall Scott dated Shakia Spencer on and off for several years, and the two had a child named Akayla in 2002. Shortly after Akayla's birth, however, Spencer began a romantic relationship with Dantzler. On the night of Sunday, April 10, 2005, Spencer brought the child to Scott's home for a visit, and after the visit, Scott walked Spencer and his daughter home. As they walked, they passed Dantzler, who was standing on the street with two friends. Though Spencer sought to reassure Dantzler that her relationship with Scott was innocent, Dantzler voiced his suspicions, and Scott and Dantzler engaged in a heated argument. Spencer, however, prevented the two men from fighting.

The prosecution witnesses testified that, two days later, Dantzler and Kevin Brown appeared on MacDonough Street between Saratoga Avenue and Thomas S. Boyland Street. There they came upon Donnell Scott, Randall's brother. Brown handed Dantzler a black plastic bag containing a .32-caliber revolver. Dantzler, it seems, mistook Donnell Scott for his brother. After taking the gun out of the bag, Dantzler tried to strike Donnell on the face with the handle; Donnell blocked the blow and the gun fired a shot.

Randall Scott was alerted, and he came to the aid of his younger brother, arriving on the scene with several others. Randall Scott grappled with Dantzler, trying to disarm him. During the struggle, however, the gun was fired, and a bullet entered Randall Scott through his left arm, lodging half an inch from his heart. After Randall Scott collapsed, Dantzler pointed the gun at him and pulled the trigger, but the gun was either jammed or was out of bullets. Dantzler then ran off.

B. *Procedural History*

1. *The Trial Proceedings*

Dantzler was charged with second-degree attempted murder, second-degree assault and criminal possession of a weapon in the second, third and fourth degrees. Randall and Donnell Scott testified against Dantzler.

Dantzler testified in his own defense. On cross-examination, he claimed that he was at home at the time of the shooting, which was approximately 6:30 p.m. He told the jury that he was sleeping from 2:30 p.m. to 10:30 p.m., and that his mother, with whom he lived in a small apartment, invariably came home at around 4:30 p.m. or 5:00 p.m. Dantzler accepted that his mother -- who was sitting the courtroom -- would be able to verify that he had emerged from his room at 10:30 p.m. Evidently, this statement did not fit well with defense counsel's trial strategy. On re-direct, Dantzler's counsel suggested that, in fact, Dantzler could not be sure that his mother would recall the night of April 12, 2005. Dantzler at first stated that she would remember it, but later agreed that she would not be able to recall exactly what had happened.

After the defense rested, the prosecutor requested a missing witness charge with respect to Dantzler's mother. The trial judge, Justice Holdman, granted the request, "based on the testimony provided at trial, specifically that the defendant stated on redirect … that his

mother would know what day they were talking about and what day this occurred." Tr. 549. The judge gave Dantzler the opportunity to call his mother if he wished, but Dantzler's counsel chose instead to object to the ruling and proceed to summations. The judge charged the jurors that, if they found that the evidence warranted the inference, they could conclude that Dantzler's mother would not corroborate Dantzler's testimony.

The jury acquitted Dantzler on the attempted murder charge, but convicted him of second-degree assault and of second and third-degree criminal weapon possession.

2. *The Sentencing Proceedings*

On November 3, 2006, the parties appeared for sentencing. The presentence report recommended incarceration for Dantzler, who continued to deny his guilt. After hearing from both sides, the judge noted that Dantzler's crime "could have been a lot worse," and pointed out that "[t]here was testimony that the defendant fired upon the complaining witness until the gun was empty, notwithstanding the fact that the bullets did not come out." S. 6-7.

Justice Holdman sentenced Dantzler to three concurrent sentences: a twelve-year term of imprisonment on the second-degree weapons conviction, and seven-year terms for the third-degree weapons count and the assault conviction. In addition, Dantzler was sentenced to five years of post-release supervision.

3. *The Appellate Proceedings*

Dantzler appealed his conviction to the Appellate Division, Second Department. In his brief, he contended that he was deprived of a fair trial because the trial court gave the missing witness charge, and that his sentence was unreasonably harsh. The Appellate Division rejected these arguments and affirmed the judgment of the Supreme Court. *People v. Dantzler*, 859 N.Y.S.2d 571 (2d Dep't 2008). The appellate court approved of the missing witness charge

"since, according to the defendant's own testimony, [his mother] was sufficiently knowledgeable about his whereabouts at the time of the crime as to make her testimony material to his defense and not cumulative." *Id.* (citing *People v Torres*, 681 N.Y.S.2d 235 (2d Dep't 1998); *People v Smith*, 658 N.Y.S.2d 449, 450 (2d Dep't 1997)). Turning to Dantzler's second argument, the court stated simply that "[t]he sentence imposed was not excessive." *Dantzler*, 859 N.Y.S.2d at 571 (citing *People v. Suitte*, 455 N.Y.S.2d 675 (2d Dep't 1982)).

On September 26, 2008, a judge of the New York Court of Appeals denied Dantzler permission to appeal to that Court. *People v. Dantzler*, 11 N.Y.3d 787 (2008) (Smith, J.).

4. *This Petition*

Dantzler filed this petition for a writ of habeas corpus on April 2, 2009. The petition refers this Court to the arguments Dantzler made to the Appellate Division: (1) that the trial court's decision to grant the prosecutor's request for a missing witness charge denied Dantzler a fair trial; and (2) that the court imposed an excessive sentence.

## DISCUSSION

A. *The Standard of Review*

Both of Dantzler's claims were adjudicated on the merits by the Appellate Division. Accordingly, each is reviewed under the deferential standard mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Under AEDPA, a federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or

"was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required … the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (internal quotation marks omitted).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it explicitly refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B. *Dantzler's Claims*

1. *The Missing Witness Charge*

Dantzler contends that he was denied a fair trial when the trial court delivered a missing witness charge as to his mother. He refers to his state-court appellate brief, where he argued unsuccessfully that there was insufficient evidence that his mother was knowledgeable

about his whereabouts at the time of the shooting to justify the charge. I conclude that this claim does not warrant habeas corpus relief.

The decision to give a missing witness charge "lies in the sound discretion of the trial court." *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992) (quotation marks omitted). Consistent with the Constitution, a jury may draw an adverse inference against a criminal defendant for failure to call an available material witness. *United States v. Caccia*, 122 F.3d 136, 140 (2d Cir. 1997) ("[T]here is no deprivation of a defendant's constitutional rights by permitting the jury to draw an adverse inference against him for his failure to call an available material witness. Such an instruction neither violates the defendant's right to have the prosecution bear the burden of proof as to all elements of the crime, nor rests on an unreasonable conclusion from the facts.").

In this case, there is nothing constitutionally troublesome about the trial court's decision to give the "control" version of the missing witness charge. *See Caccia*, 122 F.3d at 138 (the "control" version of the charge "permits the jury to draw an adverse inference against a party failing to call a witness when the witness's testimony would be material and the witness is peculiarly within the control of that party"). Dantzler himself provided a basis for the charge when he testified on cross-examination and on re-direct that he was at home sleeping at the time of the shooting and that his mother would have been able to verify that fact. Dantzler's mother -- who was generally present in the courtroom during the trial in support of her son -- could reasonably be expected to testify in Dantzler's favor if, in fact, Dantzler was at home sleeping during the shooting. And it is hard to find a witness who is more within the peculiar control of a party than the mother of a defendant, particularly a mother who attended the defendant's trial.

Accordingly, it was permissible to instruct the jury that it could draw an adverse inference against Dantzler from the fact that the defense did not call Dantzler's mother.

Moreover, the instruction took pains to stress both the preconditions for a missing witness inference and the limited effect of such an inference, further belying Dantzler's claim of unfairness. The judge charged the jury that "[t]he fact that the defendant's mother … was not called as a witness *permits but does not require* an inference that had she been called her testimony would not have supported the defense's position on that issue." Tr. 653 (emphasis added). The judge continued by stating that the jury could only draw the inference if it was satisfied: (1) that Mrs. Dantzler had material knowledge about the issue; (2) that, if called, she could reasonably be expected to testify favorably to the defense; (3) that her testimony would not have been merely cumulative of other evidence or testimony given; and (4) that she was able to be produced as a witness. This portion of the charge ended by reminding the jury that the burden of proof beyond a reasonable doubt remained on the government, even if the jury chose to infer that Mrs. Dantzler's testimony would have been unhelpful to the defendant.

In these circumstances, the Appellate Division's decision to reject Dantzler's challenge to the missing witness charge was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, and thus the claim fails on the merits.

2. *Challenge to the Sentence*

Dantzler renews his argument that, as a young man with no prior convictions and with a demonstrated potential to be productive in society, he received an excessive sentence. In his state-court brief, he contended that the sentence was excessive given that this was his first conviction, that he had demonstrated a positive work ethic, and in light of letters submitted to the court in his support.

Construing Dantzler's challenge to the length of his sentence as an attempt to raise a federal claim, I find that it provides no basis for habeas corpus relief.[1] The sentence did not exceed the maximum authorized by New York law for Dantzler's crimes, and therefore does not qualify for consideration as cruel and unusual punishment under the Eighth Amendment. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."). Nor is Dantzler's one of the "exceedingly rare" sentences that violates the Eighth Amendment by being "grossly disproportionate" to his crime. *See Ewing v. California*, 538 U.S. 11, 30-31 (2003). Accordingly, Dantzler's excessive sentence claim is meritless.

[1] Dantzler's state-court argument against his sentence rested on state law giving the Appellate Division the power to modify a sentence in the interests of justice where it considers the lower court's decision to be legal but unduly harsh or severe. *See* N.Y. Crim. Proc. Law. § 470.15(6)(b). To the extent that Dantzler's habeas petition simply reiterates that argument, it rests exclusively on state law and provides no basis for federal habeas corpus relief. *See* 28 U.S.C. § 2254(a) (a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

## CONCLUSION

For the reasons stated above, Dantzler's petition for habeas corpus is denied. As he has not made a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: September 22, 2009
Brooklyn, New York